IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEVON NEWTON,<br>    Plaintiff,<br><br>v.<br><br>PHILADELPHIA FAMILY<br>COURT, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:    CIVIL ACTION NO. 25-CV-5086<br>:<br>:<br>:<br>: |

## MEMORANDUM

MARSTON, J.                                                                                             November 14, 2025

Pro se Plaintiff Devon Newton filed this civil action against various entities and employees of the Commonwealth of Pennsylvania's Unified Judicial System.[1] Newton also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Newton's application to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice.

## I.    FACTUAL ALLEGATIONS[2]

Newton's allegations are cryptic and frequently difficult to understand. He asserts that his "child and son's mom [were] divided away from [him] by" officials of the Family Division of

---

[1] The Defendants listed in the Complaint are: (1) Philadelphia Family Court City Court House Family Division; (2) Edward V. Lehmann, Jr., Domestic Relations Branch; (3) Administrative Law Judge Walter Olszewski, Court of Common Pleas – Family Division; (4) Philadelphia Family Court City Court House Family Division Officials; and (5) Court Commissioner/Referee/Hearing Officer, Family Division. (Doc. No. 1 at 2–3.) The Family Division is part of the First Judicial District within the Commonwealth of Pennsylvania's Unified Judicial System. *See Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 235 n.1 (3d Cir. 2005) (explaining that the First Judicial District is one of 60 districts in the Commonwealth's Unified Judicial System and is composed of three courts including the Court of Common Pleas, of which the Family Division is a part.).

[2] The factual allegations set forth in this Memorandum are taken from the Complaint (Doc. No. 1), which consists of the Court's preprinted form available for pro se litigants to file civil rights claims, as well as typewritten pages. The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the entire submission. Punctuation, spelling, and capitalization errors in the Complaint will be cleaned up where necessary.

the Philadelphia Court of Common Pleas in an unspecified court proceeding, resulting in his in-laws' obtaining custody of his son.  (Doc. No. 1 at 4–5.)  Newton also alleges that on an unspecified date he "was falsely imprisoned, apprehended and detained" by "officers in uniform" and was subsequently "detained in the County Correctional Center in solitary confinement[.]"  (*Id*.)  He asserts that the events giving rise to his claims occurred at the "New Jersey Family Courthouse & Courthouse . . . Between the Family Courthouse of Philadelphia & CJC Courthouse."  (*Id*. at 4 (ellipses in original).)  He states that the events took place on May 4, 2022 and during the "months of 2022–2025" but does not explain what occurred during each of those time frames.  (*Id*.)  Newton asks the Court to "abolish the Family Division officials and Family Court judges & police academy class & law school students of inlaws Family Division [for] dividing me away from my son."  (*Id*. at 5.)  He also seeks $30 million in punitive damages for "being detained in the County Correctional Center in solitary confinement . . . ."  (*Id*.)

## II.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

The Court will grant Newton leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  *See* 28 U.S.C. § 1915(a) (stating that the Court may authorize the commencement of a lawsuit "without prepayment of fees or security" upon a showing that a prisoner is "unable to pay such fees or give security therefor").

## III.   SCREENING UNDER § 1915(E)

Because the Court grants Newton leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state "a claim on which relief may be granted."  *See id.* ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—the action or appeal fails to state a claim on which relief may be granted.").

A.  **Legal Standard**

In analyzing a complaint under § 1915(e)(2)(B)(ii), we use the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). So, the Court must determine whether Newton's Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Conclusory allegations do not suffice. *Id.* However, because Newton is proceeding pro se, we liberally construe the allegations in his Complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

"With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings." *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017); *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App' x 583, 584 (3d Cir. 2006) (observing that "*[r]es judicata* is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

B.  **Analysis**

The Court begins with Newton's claims related to his state court custody proceedings before turning to his claims related to his allegedly unlawful arrest and confinement.

1.  **Claims Based on State Court Custody Proceedings**

This is not the first time Newton has brought claims in this Court based on his state court custody proceeding. In February 2025, he filed suit against several defendants, including the Family Court of Philadelphia, divisions within the Family Court, and judges of the Family Court, challenging a 2022 child custody decision. The case was dismissed with prejudice on April 2,

3

2025 because each of the named defendants was protected by immunity or was not a person subject to suit under 42 U.S.C. § 1983.  *See Newton v. Fam. Ct. of Phila.*, No. 25-915, 2025 WL 992689 (E.D. Pa. Apr. 2, 2025) ("the February 2025 lawsuit").  Newton did not appeal that judgment.

Newton's current claims, to the extent they are similarly based on his state court custody proceedings, must be dismissed because they are barred by *res judicata*.  "Claim preclusion— which some courts and commentators also call *res judicata*—protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted).  Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.*  In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231–32.  "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims.") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)).  Three elements are required for claim preclusion to apply:  "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."

*Marmon Coal Co. v. Dir., Office Worker' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted).  All three elements are met here.

**First**, this Court entered a final judgment on the merits in Newton's February 2025 lawsuit because the case was dismissed with prejudice for failure to state a claim on statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Newton*, No. 25-915, Doc. No. 6; *see also Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (dismissal with prejudice on statutory screening is a final judgment, no different from a dismissal on motion pursuant to Fed. R. Civ. P. 12(b)).

**Second,** this case involves the same parties or their privies as the February 2025 lawsuit.  In this case, as in the February 2025 lawsuit, Newton is suing the Family Court.  (*See* Doc. No. 1 at 2.)  Here, he also broadly sues Family Court "officials" and the court "commissioner/referee/hearing officer" in their official capacity, but only names Court Administrator Lehmann and Judge Olszewski.  (*Id.*)  Administrator Lehmann and Judge Olszewski—although not named in Newton's February 2025 lawsuit—are in privity with the Family Court to the extent it was sued in Newton's prior suit.  *See Jones v. Holvey*, 29 F.3d 828, 830 (3d Cir. 1994) ("[E]mployees of [a state agency], who are the defendants in this action, may be considered to be the same or in privity with the [state agency], which was the defendant in the first action, and may claim the benefit of res judicata if it would apply to the [state agency] itself.").  Thus, the second *res judicata* factor is met.

**Third**, the two suits are based on the same cause of action because Newton's instant claims are based on the same state court proceedings that gave rise to his February 2025 lawsuit.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (stating that the relevant factors in determining whether the causes of action in two cases are sufficiently alike include:

5

"(1) whether the acts complained of and the demand for relief are the same . . .; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . .; and (4) whether the material facts alleged are the same.  It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions.") (internal quotation and citation omitted).  In both cases, Newton claimed constitutional violations under 42 U.S.C. § 1983.  And although Newton cites slightly different dates in the two cases, he alleges the same underlying facts and legal theories, i.e., that the Family Court, through its divisions and officials, infringed on his parental or familial rights when it "divided" him, his wife, and his son and awarded custody to his in laws.  (*Compare* Doc. No. 1 at 4–5, *with Newton*, No. 25-915, Doc. No. 2 at 3–4); *see also Fam. Civ. Liberties Union v. State of N.J.*, 386 F. Supp. 3d 411, 439 (D.N.J. 2019) (holding that the third res judicata factor was met where the case contained "many of the same allegations" of the prior case despite "minor differences in the exact facts alleged and the particularities of the incidents").  As for the relief being sought, Newton's February 2025 lawsuit asked the Court to, among other things, "abolish the Family Court House Domestic Relationship [sic] division . . . ."  *Newton*, No. 25-915, Doc. No. 2 at 4.  Newton seeks the same relief here.  He asks the Court to "abolish the Family Division officials and Family Court judges . . . [for] dividing my away from my son."  (Doc. No. 1 at 5.)

Because the acts complained of and the relief being sought in the two lawsuits are essentially the same and Newton's February 2025 lawsuit against Defendants and their privies was previously dismissed on the merits, Newton's new claims are barred by *res judicata*.  The Court will therefore dismiss those claims with prejudice.[3]

---

[3] To the extent Newton's claims against Administrator Lehmann, Judge Olszewski, and the unnamed Family Division officials and "commissioner/referee/hearing officer" are based on acts taken in their judicial capacities, those claims are dismissed for the additional reason that these Defendants are entitled to absolute judicial immunity.  *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978); *see also*

6

### 2. Claims Based on Arrest and Confinement

Newton also asserts two constitutional claims not raised in his February 2025 lawsuit, arising from his alleged arrest and subsequent placement in solitary confinement in the "County Correctional Center" on an unspecified date. (Doc. No. 1 at 4–5.) The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.[4] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). From Newton's sparse allegations, the Court understands Newton to allege a Fourth Amendment false arrest/false imprisonment claim and a Fourteenth Amendment conditions of confinement claim. For the reasons discussed below, neither claim is plausible, but the Court will grant him leave to amend.

#### a. Fourth Amendment False Arrest Claim

Newton contends that he was "falsely imprisoned, apprehended and detained." (Doc. No. 1 at 4.) "False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citation

---

*Feingold v. Hill*, 521 A.2d 33, 36 (Pa. Super. Ct. 1987) ("[T]he law in Pennsylvania is well established that judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over the subject matter and person."); *Sinanan v. Child., Youth & Fam. Div., Cnty. of Northampton*, No. 23-2442, 2024 WL 308528, at *5 (E.D. Pa. Jan. 26, 2024) (noting that hearing officers acting in their judicial capacities are entitled to the same absolute immunity as judges) (citing cases). The Family Division, which Newton names as a Defendant, is also dismissed for the additional reason that it shares in the Commonwealth of Pennsylvania's Eleventh Amendment immunity, *see Benn*, 426 F.3d at 241, and because the Family Division is not a "person" for purposes of § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 70–71 (1989).

[4] Using the Court's form complaint for civil rights violations, Newton checked boxes to indicate that he asserts claims under both § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. No. 1 at 3.) However, because no federal officer is named in the Complaint, Newton has no basis to assert a *Bivens* claim.

omitted)); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995); *Noviho v. Lancaster County*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted).

Newton's false arrest claim is conclusory and lacks any allegation that his arrest was conducted without probable cause. Without more than the conclusory statement that he was "falsely imprisoned, apprehended, and detained[,]" Newton's Fourth Amendment claim is not plausible. *See Basile v. Township of Smith*, 752 F. Supp. 2d 643, 657 (W.D. Pa. 2010) (finding that plaintiff's "allegations [of false arrest] are conclusory and . . . nothing more than a threadbare recital of the elements of a § 1983 false arrest claim" where he asserted that he was "arrested without probable cause . . . .'"). Moreover, Newton does not allege the personal

involvement of any of the named Defendants in his alleged false arrest. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." (quotation marks and citations omitted)). Finally, as noted above, Newton alleges the events giving rise to his claims occurred on May 4, 2022 and the "months of 2022–2025." To the extent Newton filed this lawsuit more than two years after the events giving rise to his claims, those claims may now be time-barred because they are subject to Pennsylvania's two-year statute of limitations for personal injury actions. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose," which in Pennsylvania is two years. (citing 42 Pa. Cons. Stat. § 5524(2))).

Accordingly, the Court dismisses Newton's claims for false arrest and imprisonment. If Newton can allege a timely Fourth Amendment claim against any named Defendant under the standard set forth above, he may file an amended complaint.

      b.  *Conditions of Confinement Claim*

Newton also alleges that following his arrest, he was held in solitary confinement in the "County Correctional Center[,]" which he contends amounted to cruel and unusual punishment. (Doc. No. 1 at 4–5.) The Eighth Amendment governs such claims when brought by convicted inmates and the Due Process Clause of the Fourteenth Amendment governs such claims when brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Though similar, the standards vary slightly depending on which Amendment applies.

"To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's

9

act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (alterations omitted)). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "[S]o long as the conditions of . . . confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020). Likewise, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id*. (internal quotations and alterations omitted). In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th

197 (3d Cir. 2024) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

Newton does not allege any of the details of his solitary confinement, including why he was placed there, for how long, or that he was denied any basic human needs during his confinement. Indeed, he fails to allege more than the mere fact of his placement in solitary confinement. As such, his conditions of confinement claim is not plausible under either the Eighth or Fourteenth Amendment. *See Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992) ("Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman or totally without penological justification."); *see also Bacon v. Luzerne County*, No. 23-1699, 2025 WL 1804985, at *12 (M.D. Pa. June 30, 2025) (dismissing plaintiff's Fourteenth Amendment substantive due process claim because he "does not demonstrate how the temporary deprivation of liberty in solitary confinement amounts to punishment"). Moreover, Newton does not allege the personal involvement of any Defendant in his placement in solitary confinement. *See Baraka*, 481 F.3d at 210. And as with his Fourth Amendment claims, to the extent Newton filed this lawsuit more than two years after the events giving rise to his confinement claim, it may now be time-barred.

To the extent Newton can allege a timely conditions of confinement claim against any named Defendant under the appropriate standard set forth above, he may do so in an amended complaint.[5] In filing any amended complaint, Newton must clarify whether he was a convicted prisoner or pretrial detainee at the time of his confinement.

---

[5] As with his Fourth Amendment claims, to the extent Newton filed this lawsuit more than two years after the events giving rise to his Fourteenth Amendment claims, they may now be time-barred.

**IV.    CONCLUSION**

For those reasons, the Court will grant Newton leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  The claims based on Newton's state court custody proceedings will be dismissed with prejudice, because he cannot cure the defects identified above through amendment.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend need not be granted where "amendment would be inequitable or futile").  His claims based on his arrest and placement in solitary confinement will be dismissed without prejudice and with leave to amend.  An appropriate Order will be entered separately.